FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2019 AUG -9 PM 1: 54

JAMES A. GUSTINO,

        Plaintiff,

v.

STONEYBROOK WEST MASTER
ASSOCIATION, INC. and
ASHLEY MOODY, in her official capacity
as Attorney General of the State of Florida,

        Defendants.

_____/

## COMPLAINT TO REDRESS CIVIL RIGHTS VIOLATIONS AND FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, JAMES A. GUSTINO ("GUSTINO") brings this action against Defendants, STONEYBROOK WEST MASTER ASSOCIATION, INC. ("STONEYBROOK WEST") and ASHLEY MOODY, solely in her official capacity as attorney general of the State of Florida (the "ATTORNEY GENERAL"), and alleges:

### I.      INTRODUCTION

1.     This is a civil rights action brought by GUSTINO pursuant to 42 U.S.C. 1983 to challenge as constitutionally infirm under the First, Fifth and Fourteenth Amendments to the United States Constitution the attorney's fees judgment entered against him and in favor of STONEYBROOK WEST on May 31, 2019 in that certain case styled *Premier Security Services Worldwide Corp. v. Stoneybrook West Master Association, Inc.*, Case No. 2014-CA-0052540 (Orange County Circuit Court).

2.      GUSTINO further seeks a declaration from this Court that *Fla. Stat.* 57.105(1) and (3), both on its face and as applied, violates the First, Fifth and Fourteenth Amendments to the United States Constitution, together with a preliminary and injunction prohibiting STONEYBROOK WEST from enforcing its judgment against him.

3.      In addition to the declaratory and injunctive relief requested herein, GUSTINO further seeks damages in an amount to be determined by this Court for to address the injuries sustained to GUSTINO's professional reputation as the direct and proximate result of the constitutionally infirm judgment challenged at bar.

## II.      **PARTIES**

### A.      **Plaintiff**

4.      GUSTINO is a citizen and resident of Montverde, Florida.  GUSTINO is a full-time practicing litigation attorney in Central Florida, a highly regarded member of the bar of the State of Florida since 1986, and a long-time member of the bar of this Court. Over the course of a 35-year legal career, GUSTINO has never been a sanctioned by any court or bar association other than via the attorney's fee award challenged in this action.[1]

### B.      **Defendants**

5.      STONEYBROOK WEST is a Florida not-for-profit corporation transacting its business affairs and located in Winter Garden, Florida.

6.      The ATTORNEY GENERAL represents and serves the State of Florida as its chief legal officer, and is under a duty to enforce the laws of the State of Florida, including,

---

[1] GUSTINO previously was admitted to the bar of the State of Tennessee in 1984 before relocating to Orlando in January 1986.

GUSTINO's Martindale rating can be accessed here: https://www.martindale.com/winter-garden/florida/james-arthur-gustino-852671-a/ and his professional history, education and numerous testimonials from peers and clients can be accessed here: https://www.gustinolaw.com/

*Fla. Stat.* 57.105(1) and (3).  The ATTORNEY GENERAL is sued in solely her official capacity and is a proper party to this action.[2]

### III.   JURISDICTION AND VENUE

7.     This action exclusively presents federal questions under the First, Fifth and Fourteenth Amendments of the United States Constitution and under federal law, 28 U.S.C. 2201 and 2202, as well as 42 U.S.C. 1983 and 1988, and 28 U.S.C. 1920.

8.     This court has jurisdiction over the federal claims raised under 28 U.S.C. 1331 and 1343.

9.     This Court has authority to grant the requested injunctive relief under 28 U.S.C. 1343(3), the requested declaratory relief under 28 U.S.C. 2201 and 2202, the claim for damages under 42 U.S.C. 1983, and Plaintiff's prayer for costs, including reasonable attorney's fees, under 42 U.S.C. 1988 and 28 U.S.C. 1920.

10.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391 because the claims arose in this District and Defendants can either be found in or transact business in the Middle District of Florida.

### IV.   FACTUAL ALLEGATIONS

#### A.   History of State Court Action

11.    On May 20, 2014, the undersigned counsel filed a simple breach of contract action against STONEYBROOK WEST on behalf of Premier Security Services Worldwide Corp. ("Premier Security") in the Circuit Court in and for Orange County Florida (Case No. 2014-CA-0052540).

---

[2] See, e.g., *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1490-91 (11th Cir. 1993) (collecting cases).

12. On June 30, 2014, STONEYBROOK WEST filed a motion seeking to disqualify the undersigned as counsel for Premier Security. Although the undersigned had not represented STONEYBROOK WEST for approximately 6 months at that time of the lawsuit's filing and – far more importantly – had not had any involvement whatsoever in preparing, reviewing, or advising STONEYBROOK WEST with respect to the contract in question, the trial court judge granted the motion for disqualification. The trial court reasoned that since the undersigned counsel previously had prepared, reviewed, and advised STONEYBROOK WEST concerning *other* contracts, the "substantially related" representation standard of Rule 4-1.9, *R. Regulating Fla. Bar,* had been met.[3]

13. The undersigned counsel then initiated a petition for certiorari review before the Fifth District Court of Appeal (the "state appellate court") on behalf of Premier Security. Although the petition was uploaded to the state appellate court and commenced transmission in a timely manner, the petition's transmission appears not to have been *completed* until one minute after the midnight deadline applicable to such filing.

---

[3] The undersigned believed then, and continues to believe today, that the trial court erred in this judgment. Rule 4-1.9 of the Florida Rules of Professional Conduct provides the framework for analysis of this issue and states, in pertinent part: "A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." And, in determining whether the matter before the court is "substantially related" to the attorney's former representation of the client, the Comment to the Rule instructs as follows:

> "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."

No evidence of either disqualifying factor was presented to the trial court by STONEYBROOK WEST, and all evidence that was before the trial court demonstrated that neither disqualifying factor had been triggered. Indeed, the trial court expressly acknowledged that the evidence had proven that the undersigned was not at all involved in the preparation, review, or advising of STONEYBROOK WEST in connection with the Premier Security contract.

14.     The undersigned counsel then filed a motion to accept the late filing of petition for writ of certiorari and a motion for leave of court to file his declaration in support thereof. True and correct copies of the petition and motions are attached hereto and incorporated herein as **COMPOSITE EXHIBIT A**.

15.     The state appellate court granted the motion for leave to file the declaration but denied the motion to accept late filing.  A true and correct copy of the state appellate court ruling is attached hereto and incorporated herein as **EXHIBIT B**.

16.     The undersigned counsel timely filed a motion for rehearing in which the sole case relied upon by the state appellate court in its ruling was rationally distinguished, and further legal authorities were proffered in support of the relief requested.  The undersigned also filed a request for oral argument concerning the motion for rehearing. True and correct copies of those motions are attached hereto and incorporated herein as **COMPOSITE EXHIBIT C**.

17.     In response, STONEYBROOK WEST's counsel took the position that the motion for rehearing was "legally untenable," and filed a motion seeking attorney's fees and costs pursuant to *Fla. Stat.* 57.105. A true and correct copy of the motion seeking attorney's fees and costs is attached hereto and incorporated herein as **EXHIBIT D**.  The undersigned counsel then timely filed a response (and amended response[4]) to STONEYBROOK WEST's motion.  A true and correct copy of the amended response is attached hereto and incorporated herein as **EXHIBIT E**.

18.     On December 23, 2014, the state appellate court denied the undersigned's request for oral argument and motion for rehearing and granted STONEYBROOK WEST's motion for attorney's fees.  A true and correct copy of the state appellate court order is attached

---

[4] The amended response solely corrected dates incorrectly set forth in the initial response and clarified the final sentence in paragraph 9 of the initial response. See footnote 1 to the amended response (**EXHIBIT E**).

hereto and incorporated herein as **EXHIBIT F**.  No explanation for the state appellate court's ruling was set forth, and none of the findings required by *Fla. Stat*. 57.105 were made.

19.    Approximately 4 1/2 years later, an evidentiary hearing was conducted, *inter alia*, on the issue of appellate attorney's fees due to STONEYBROOK WEST under *Fla. Sta*. 57.105, and on May 31, 2019, the lower court entered its final judgment awarding attorney's fees and costs.  A true and correct copy of the judgment is attached hereto and incorporated herein as **EXHIBIT G**.

20.    On July 1, 2019, the undersigned timely appealed the final judgment awarding attorney's fees and costs to the Fifth District Court of Appeal on purely <u>state</u> law legal grounds. The instant action proceeds solely on <u>federal</u> constitutional law grounds.

**B.    History of *Fla. Stat*. 57.105**

21.    In 1999, as part of the comprehensive tort reform legislation enacted by the Florida Legislature, *Fla. Stat*. 57.105 was substantially revised "to significantly broaden the courts' authority to award attorneys' fees [thereunder]." *Boca Burger, Inc. v. Forum*, 912 So.2d 561, 570 (Fla. 2005).  At all times material to this Complaint, *Fla. Stat*. 57.105(1) and (3) read, in pertinent part, as follows:

> 1)    Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a)    Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b)    Would not be supported by the application of then-existing law to those material facts.

6

\*\*\*

(3)   Notwithstanding subsections (1) and (2), monetary sanctions may not be awarded:

(a)   Under paragraph (1)(b) if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

22.     Accordingly, in order to justify an award of attorney's fees under the statute, the state court must initially find that "the losing party's attorney knew or should have known that a claim … when … presented to the court, … [w]ould not be supported by the application of then existing law…."  Should the state court make such a finding, however, the analysis is not yet complete; the state court must further determine whether the legal position advanced qualified as "a good faith argument for the extension, modification or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success."

23.     Neither the state appellate court nor state trial court made the judicial findings required under *Fla. Stat.* 57.105(1) and (3).

24.     Furthermore, in amending *Fla. Stat.* 57.105 in 1999, the Florida Legislature failed to justify its "significant[] broaden[ing]" of the statute's liability reach with any empirical data demonstrating – *or even arguably demonstrating* – that the predecessor version of *Fla. Stat.* 57.105, the long-standing and well-structured disciplinary procedures established by the Florida Supreme Court (and enforcement authority granted to The Florida Bar), and the contempt and inherent authority remedies available to the judiciary: (a) were inadequate to control abusive and/or dilatory litigation conduct engaged in by counsel; and/or (b) the new verbiage of *Fla. Stat.* 57.105 was properly tailored in accordance with the fundamental

constitutional rights of free speech and due process guaranteed by the First, Fifth and

Fourteenth Amendments of the United States Constitution.[5]

25.     Moreover, it is fair to characterize the case law interpreting the revised *Fla.*

*Stat.* 57.105 as jumbled and inconsistent.  For example, in *Mullins v. Kennelly,* 847 So. 2d

1151, 1155 n.4 (Fla. 5th DCA 2003), the appellate court noted that

> **Although the goal of section 57.105 is laudatory, fairly and consistently applying
> the statute is problematic.** "In the legal world, claims span the entire continue him
> from overwhelmingly strong to outrageously weak.  Somewhere between these two
> points, courts draw a line to separate the nonfrivolous from the frivolous, the former
> category providing safe shelter, the latter subjecting attorney and client to sanctions."
> As Judge Gersten observed in commenting on the earlier version of section 57.105:
>
>> We recognize that to some extent, the definition of "frivolous" is incapable of
>> precise determination. Nevertheless, a review of Florida caselaw reveals that
>> there are established guidelines for determining when an action is frivolous.
>> These include where a case is found: (a) to be completely without merit in law
>> and cannot be supported by a reasonable argument for an extension,
>> modification or reversal of existing law; (b) to be contradicted by overwhelming
>> evidence; (c) as having been undertaken primarily to delay or prolong the
>> resolution of the litigation, or to harass or to maliciously injure another; or (c)
>> [sic] as asserting material factual statements that are false.  While the revised
>> statute incorporates the "not supported by the material facts or would not be
>> supported by application of then-existing law to those material facts" standard
>> instead of the "frivolous" standard of the earlier statute, **an all encompassing
>> definition of the new standard defies us.  It is clear the bar for the
>> imposition of sanctions has been lowered, but just how far it has been
>> lowered is an open question....**

(emphasis added; citations omitted).

26.     Indeed, the standard is so vague and amorphous that even experienced appellate

judges *on the same panel reviewing the same facts* have reached diametrically opposed

---

[5] Indeed, the Legislature expended virtually all its time and energy in crafting its "comprehensive tort reform" package on other, more salient concerns, *i.e.*, controlling perceived abuses in product liability law, the law governing the award of punitive damages, the law governing apportionment of liability among co-defendants for damage awards, the legal standards governing liability for negligent hiring, the law governing premises liability cases, and the law governing liability for "dangerous instrumentalities." See, e.g., Walter G. Latimer, *Florida Tort Reform-1999*, 73 Fla. Bar J. 56 (Nov. 1999).

conclusions regarding whether a legal position is to be sanctioned under the statute. *E.g.,* *Conservation. Alliance v. Martin County*, 73 So. 3d 856 (Fla. 1st DCA 2011). Of course, this begs the question: if experienced appellate state court judges are construing the standard in such a remarkably divergent manner, how can the average "reasonably competent litigator" be presumed to know where the line is to be drawn?

27.     *Fla. Stat.* 57.105, on its face and as applied to GUSTINO by the state appellate and trial court in the *Premier Security* case, improperly and imprecisely interferes with the undersigned's constitutionally protected expressive activities as an advocate charged with the fiduciary duty to zealously represent, and seek justice for, his clients.

28.     *Fla. Stat.* 57.105, on its face and as applied, inflicts irreparable injury upon the First, Fifth and Fourteenth Amendment rights of GUSTINO, his clients, and other legal advocates and their clients, under the United States Constitution.

29.     Unless and until this Court issues declaratory and injunctive relief, the fundamental free speech rights of GUSTINO, his clients, and other legal advocates and their clients shall be significantly and impermissibly trammeled, and good faith advocacy for the modification, extension or reversal of existing law will be severely chilled.[6]

30.     *Fla. Stat.* 57.105, on its face and as applied, severely threatens to undermine the duty of zealous advocacy GUSTINO and other litigators owe to their clients.[7]

---

[6] Indeed, it is difficult to see how such ground-breaking and currently well-established constitutional rights such as those enunciated in *Brown v. Board of Education*, 347 U.S. 483 (1954), *Gideon v. Wainwright*, 372 U.S. 335 (1963), *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Miranda v. Arizona*, 384 U.S. 436 (1966), *Roe v. Wade*, 410 U.S. 113 (1973), *Bowers v. Hardwick*, 478 U.S. 186 (1986), and many others – cases long studied by every first-year law student in the U.S. – could have become law, *assuming a brave enough advocate could have been found to bring those cases at all*, under the revised *Fla. Stat.* 57.105.

[7] Of course, it is beyond cavil that the Florida attorney's duty of zealous advocacy is constrained by the Florida Rules of Professional Conduct, including Rule 4-3.1, but the standard articulated therein by the Florida Supreme Court ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is *not frivolous, which includes a good faith argument for an extension,*

9

31.     Although Florida case law asserts that the revised *Fla. Stat.* 57.105 is patterned

after Rule 11 of the Federal Rules of Civil Procedure, see *Mullins v. Kennelly,* 847 So. 2d at

1154-55, fundamental differences exist between the two standards that make clear that *Fla.*

*Stat.* 57.105 does not pass federal constitutional muster under U.S. Supreme Court and

Eleventh Circuit precedents.[8]

---

*modification, or reversal of existing law*") diverges substantially from the Legislature's standard as set forth in the revised *Fla. Stat.* 57.105 ("a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable *expectation of success*"). Note well that the statute does not speak to a "reasonable *possibility* of success" but a "reasonable *expectation* of success." In common parlance, a "reasonable *expectation of success*" would suggest a scenario wherein there is a *greater likelihood than not of prevailing*. Under such a standard, the titan litigators responsible for bringing and arguing such cases as *Brown v. Board of Education*, 347 U.S. 483 (1954) and the others set forth in footnote 3 presumably would not only have lost each and every one of those cases if brought in Florida under the revised *Fla. Stat.* 57.105, but would also have been subject to hefty judgments awarding attorney's fees against them.

[8] In pertinent part, Rule 11 provides as follows:

***

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law *or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) SANCTIONS.

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

32.     The acts of STONEYBROOK WEST and the state courts as alleged herein and challenged under the First, Fifth and Fourteenth Amendments of the United States Constitution were done and continue to be done under color of state law.

**FIRST CAUSE OF ACTION – VIOLATION OF FREE SPEECH RIGHTS**

33.     GUSTINO realleges and incorporates by reference paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34.     GUSTINO's advocacy on behalf of his client lies at the core of the First Amendment to the United States Constitution.[9]

---

(3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) *Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.* The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) *Requirements for an Order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.*

(emphasis added.)

GUSTINO submits that it is of critical significance that the Rule 11 standard ("the claims, defenses, and other legal contentions are warranted by existing law *or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*") tracks precisely the standard enunciated by the Florida Supreme Court in Rule 4-3.1 of the Florida Rules of Professional Conduct ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is *not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law*"). Unfortunately, as shown above, the Florida Legislature sought to exert upon litigants and their counsel far greater constraints and financial pressure upon their advocacy than had been permitted by the Florida Supreme Court in crafting Rule 4-3.1.

[9] See, e.g., *Legal Services Corporation v. Velasquez*, 531 U.S. 533, 121 S. Ct. 1043 (2001) (a Congressional program that publicly funds litigation on behalf of the poor but prevents their attorneys from advocating for changes to existing law violates the First Amendment). See also *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1308 (11th Cir.2017) ("Content-based restrictions on speech normally trigger strict scrutiny. Such review

35.     *Fla. Stat.* 57.105, on its face and as applied, is overbroad in its penalization of professional advocacy and free speech.

36.     *Fla. Stat.* 57.105, on its face and as applied, is overbroad in its penalization of professional advocacy because it sanctions and chills speech that is protected under the United States Constitution.   Unlike the standard set forth in Rule 11 of the Federal Rules of Civil Procedure – which sanctions only wholly frivolous arguments for extending, modifying or reversing existing law, or for establishing new law – *Fla. Stat.* 57.105(3) sanctions good faith arguments for the extension, modification, or reversal of existing law, or for the establishment of new law, unless the state court finds that those arguments had not a reasonable possibility of success, but "a reasonable *expectation* of success" (emphasis added).

37.     Because *Fla. Stat.* 57.105, on its face and as applied, restricts more speech than is necessary – or even reasonably necessary – to achieve its legitimate governmental interest in deterring and penalizing wholly frivolous and implausible advocacy, it is constitutionally infirm.[10]

38.     Furthermore, *Fla. Stat.* 57.105 constitutes an unconstitutional content-based and viewpoint-based restriction on speech in that it targets and penalizes a specific category of speech, *i.e.*, good faith arguments for the extension, modification, or reversal of existing law, or for the establishment of new law, <u>absent a state court finding that such arguments had or have "a reasonable *expectation* of success"</u> (emphasis added).

---

is properly skeptical of the government' ability to calibrate the propriety and utility of speech on certain topics.") (citation omitted); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("[t]he purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression.")

[10]  See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (establishing "plausibility" as the touchstone for evaluating federal court complaints under Rule 8 of the Federal Rules of Civil Procedure).

39.   *Fla. Stat.* 57.105, on its face and as applied, constitutes an unconstitutional content-based and viewpoint-based restriction on speech because it was enacted and is applied to restrict good faith professional advocacy seeking changes in the law, but permits unrestricted professional advocacy in favor of maintaining the legal status quo.

40.   *Fla. Stat.* 57.105 discriminates on its face and as applied against GUSTINO, his clients, and other attorney advocates and their clients, by constraining them from engaging in speech and expressive activities based solely upon the content and viewpoint of such speech and expressive activities.

41.   *Fla. Stat.* 57.105, on its face and as applied, is an overbroad and constitutionally unacceptable content-based and viewpoint-based restriction on expression for the additional reason that it vests in governmental representatives – none of whom are appointed to life tenures, and thus are vulnerable to political influence – extraordinarily wide discretion in determining whether an argument for the extension, modification, or reversal of existing law, or for the establishment of new law, has "a reasonable *expectation* of success" (emphasis added).

42.   *Fla. Stat.* 57.105, on its face and as applied, is an overbroad and constitutionally unacceptable content-based and viewpoint-based restriction on expression for the further reason that it is incapable of uniform application.   See, e.g., Florida cases excerpted in paragraphs 25-26, *infra*.

43.   *Fla. Stat.* 57.105, on its face and as applied, is an overbroad and constitutionally unacceptable content-based and viewpoint-based restriction on expression for the additional reason that it – unlike Rule 11 – neither requires that the sanction imposed "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"

nor require that the order granting such sanction "describe the sanctioned conduct and explain the basis for the sanction [imposed]."

44.     In addition, *Fla. Stat.* 57.105, on its face and as applied, imposes an impermissible prior restraint on constitutionally protected speech in that it restrains and chills professional advocacy by GUSTINO, his clients, and other attorney advocates and their clients, because of the fear a court may deem advocacy for the extension, modification, or reversal of existing law, or for the establishment of new law, to fall short of the "reasonable *expectation* of success" standard (emphasis added).[11]

45.     GUSTINO, his clients, and other attorney advocates and their clients, have suffered damages, and shall continue to suffer damages, as the proximate result of *Fla. Stat.* 57.105, on its face and as applied.

46.     Additionally, GUSTINO, his clients, and other attorney advocates and their clients, have no adequate remedy at law to redress the violations of their fundamental federal constitutional rights as alleged herein.  Damages flowing from injuries suffered to one's professional standing and reputation in the legal community are extraordinarily difficult, if not impossible, to quantify.

WHEREFORE, GUSTINO most respectfully prays that the Court will grant the relief set forth hereinafter in the prayer for relief.

---

[11] This is not at all a theoretical concern, but a very real one.  GUSTINO, after reviewing the state appellate court order in December 2014 made the decision not to file a motion for reconsideration of that ruling because he feared a further sanctioning by the court.  GUSTINO submits that such a fear was not at all unreasonable given the state appellate court's terse and wholly unexplained order, its rejection of his request for oral argument on the *Fla. Stat.* 57.105 issue, its previous rejection of his motion to accept late filing of petition for writ of certiorari, and the extraordinarily wide discretion the statute gave the court in determining whether the advocacy in question satisfied the "reasonable *expectation* of success" standard (emphasis added).

## SECOND CAUSE OF ACTION – VIOLATION OF DUE PROCESS RIGHTS

47.     GUSTINO realleges and incorporates by reference paragraphs 1 through 32 of this Complaint as though fully set forth herein.

48.     *Fla. Stat*. 57.105, on its face and as applied, constitutes an unconstitutionally vague restriction on speech and professional advocacy because it fails to adequately advise, notify or inform attorneys and/or parties subject to sanction thereunder of its requirements relative to advocacy for extensions, modifications, or reversals of existing law, or for the establishment of new law.

49.     *Fla. Stat*. 57.105, on its face and as applied, constitutes an unconstitutionally vague restriction on speech and professional advocacy because it fails to provide fair notice and warning to attorneys and/or parties when and under what circumstances the "reasonable *expectation* of success" standard is satisfied (emphasis added).

50.     The "reasonable expectation of success" standard in *Fla. Stat*. 57.105 reflects an irrational and unreasonable policy, which imposes irrational and unreasonable restrictions upon the exercise of constitutionally protected speech and expressive activities by GUSTINO, his clients, and other attorney advocates and their clients.

51.     *Fla. Stat*. 57.105, on its face and as applied, constitutes an unconstitutionally vague restriction on speech and professional advocacy for the further reason that it is incapable of uniform application.  See, e.g., Florida cases excerpted in paragraphs 25-26, *infra*.

52.     Upon information and belief, it is respectfully submitted that the ATTORNEY GENERAL cannot articulate a compelling, or even rational, reason to prevent GUSTINO, his clients, and other attorney advocates and their clients from engaging in constitutionally

15

protected speech and expressive activities, and for penalizing them having engaged in such constitutionally permissible speech.

53.    *Fla. Stat.* 57.105, on its face and as applied, violates the due process rights of GUSTINO, his clients, and other attorney advocates and their clients, in violation of his and their constitutional rights under the under the First, Fifth and Fourteenth Amendments of the United States Constitution.

54.    *Fla. Stat.* 57.105, on its face and as applied, violates the due process rights of GUSTINO, his clients, and other attorney advocates and their clients, in that it restrains and chills professional advocacy by GUSTINO, his clients, and other attorney advocates and their clients, because of the fear a court may deem advocacy for the extension, modification, or reversal of existing law, or for the establishment of new law, to fall short of the "reasonable *expectation* of success" standard (emphasis added).[12]

55.    GUSTINO, his clients, and other attorney advocates and their clients, have suffered damages, and shall continue to suffer damages, as the proximate result of *Fla. Stat.* 57.105, on its face and as applied.

56.    Additionally, GUSTINO, his clients, and other attorney advocates and their clients, have no adequate remedy at law to redress the violations of their fundamental federal constitutional rights as alleged herein.  Damages flowing from injuries suffered to one's professional standing and reputation in the legal community are extraordinarily difficult, if not impossible, to quantify.

---

[12] This is not at all a theoretical concern, but a very real one.  GUSTINO, after reviewing the state appellate court order in December 2014 made the decision not to file a motion for reconsideration of that ruling because he feared a further sanctioning by the court.  GUSTINO submits that such a fear was not at all unreasonable given the state appellate court's terse and wholly unexplained order, its rejection of his request for oral argument on the *Fla. Stat.* 57.105 issue, its previous rejection of his motion to accept late filing of petition for writ of certiorari, and the extraordinarily wide discretion the statute gave the court in determining whether the advocacy in question satisfied the "reasonable *expectation* of success" standard (emphasis added).

WHEREFORE, GUSTINO most respectfully prays that the Court will grant the relief set forth hereinafter in the prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, GUSTINO respectfully prays that judgment be entered in his favor, and that relief be granted against the Defendants as follows:

1.    that this Court assume jurisdiction over this action;

2.    that this Court declare *Fla. Stat.* 57.105 unconstitutional on its face as it violates the rights of GUSTINO, his clients, and other attorney advocates and their clients, to the free speech and due process rights guaranteed to them under the First, Fifth and Fourteenth Amendments of the United States Constitution;

3.    that this Court declare *Fla. Stat.* 57.105 unconstitutional as applied to GUSTINO under the facts alleged herein as it violates the rights of GUSTINO to the free speech and due process rights guaranteed to him under the First, Fifth and Fourteenth Amendments of the United States Constitution;

4.    that this Court enter preliminary and permanent injunctive relief against the continued enforcement of *Fla. Stat.* 57.105 as presently crafted, both on its face with respect to GUSTINO, his clients, and other attorney advocates and their clients, and as applied to GUSTINO under the facts as herein alleged;

5.    that this Court award GUSTINO nominal damages, together with such actual damages as the trier of fact may find due to GUSTINO, as authorized by federal law;

6.    that this Court award GUSTINO costs and reasonable attorney's fees, as authorized by federal law; and

7.     that this Court grant such other and further relief as this Court finds just and

proper in this action.

Respectfully submitted this 8th day of August 2019.

*/s/ James A. Gustino*
Florida Bar No. 612499
JAMES A. GUSTINO, P.A.
P.O. Box 784959
Winter Garden, Florida 34778-4959
(407) 625-6700 / *telephone*
(407) 641-9333 / *facsimile*
jgustino@gustinolaw.com / *email 1*
gustinolaw@protonmail.com / *email 1*